IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR-07-124-01T |
| | : | |
| JOHN P. PERRAS | : | |

GOVERNMENT'S SENTENCING MEMORANDUM

The government recommends a sentence of imprisonment at the high end of the guideline range. The government bases its recommendation upon the defendant's criminal history and the circumstances of the offenses committed.

In considering its sentencing recommendation, the government looks to the defendant's criminal history, which is significant. The defendant has more than the minimum 13 points needed for a criminal history category of VI, and at least two of his convictions were not counted. (Presentence Report (PSR) ¶¶ 45, 46). The defendant's criminal misconduct began when he was 15 and has continued, virtually without interruption, until his imprisonment in this case. A review of paragraphs 28 - 47 of the PSR reveals that since 1998 the defendant has had no more than one year and often less than six months pass between offenses. This is true without considering the other criminal conduct for which the defendant has been arrested. Many of the defendant's convictions were for crimes similar to the fraud committed in this case. Perhaps even more troubling, aside from the fraud convictions, the defendant has a history of harassing and assaulting women. (PSR ¶¶ 44, 45, 47, 59, 60). The defendant's

gross recidivism demonstrates his need for deterrence and his lack of rehabilitative potential.

Despite the defendant’s numerous adult convictions, resulting in a criminal history category of VI, the total time to which the defendant has been sentenced does not exceed two and one-half years. This shows a history of lenient treatment by various courts towards the defendant. When interviewed by Secret Service Agent Caroline O’Brien-Buster, defendant said that he had been manufacturing counterfeit checks for the past three years. He said, “it’s easy money, I can’t seem to help myself.” He admitted that he had been arrested for counterfeit checks in the past, but he said that he had not gotten “into any real trouble for it.” The defendant told Agent O’Brien-Buster that he did not believe that he could stop manufacturing counterfeit checks because, “it’s so easy to make fast money.” The defendant then showed the agent the tattoo on his hand which stated, “easy money.” Such comments demonstrate that the lenient treatment afforded the defendant in the past, has not fostered a respect for the law or impressed upon him the seriousness of his misconduct. One is certainly left to wonder whether the defendant would be before this Court today if sentences previously imposed upon the defendant had been more substantial.

The defendant has had sporadic employment during his adult life. It does not appear that he has been gainfully employed

within the last four years. Moreover, the employment he did have was short in duration, and at least one of his employers would be unwilling to hire the defendant again. Instead of work, it appears as though the defendant has chosen the "easy money" of fraud as his means of support.

The nature and circumstances of the instant case also justify a sentence above the middle of the guideline range. The defendant was a ringleader of a fairly extensive check cashing scheme that resulted in over $100,000 worth of loss to two separate banks. Given the financial status of the defendant and his co-conspirators, it is unlikely that the victim banks will ever be made whole. The amount he stole is more than halfway through the range of $70,000 - $120,000 set forth in U.S.S.G. § 2B1.1, thus making it more serious that other offenses resulting in the same offense level adjustment.

Despite the limited cognitive abilities highlighted in the defendant's sentencing memorandum, his scheme required technical expertise, a knowledge of banking and computers, and planning. The defendant explained how he executed his scheme in great detail to Agent O'Brien-Buster. He said that it was "so easy to trick Citizens bank out of money, they should really increase their security on their check cashing policy." He then explained how Bank of America used security strips and that despite his efforts, he was unable to cash checks drawn on Bank of America

accounts. Apparently Bank of America's security prevented the victimization of a third bank.

In sum, the nature of the offense, the defendant's criminal history, and the lenient treatment afforded him in the past all warrant a sentence of imprisonment at the high end of the guideline range.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj.gov

CERTIFICATE OF SERVICE

On March 6, 2008, I caused the within "Government's Sentencing Memorandum" to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Mr. Edward C. Roy
10 Weybosset Street - Suite 300
Providence, Rhode Island 02903

United States Probation Office
2 Exchange Terrace - 2nd FL
Providence, RI 02903

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj